Lynes *vs.* Reed.

TIMOTHY D. LYNES, plaintiff in error, *vs.* JOHN M. C. REID, defendant in error.

On the trial of a case the defendant was sworn as a witness in favor of himself, and the plaintiff, in rebuttal, introduced witnesses impeaching the general character of the defendant, showing that he was unworthy of credit on his oath. The defendant moved the Court for a continuance of the case, on the ground of being surprised at the evidence offered, impeaching his general character as a witness, which the Court refused to allow. A verdict was rendered against the defendant, and there was a motion for a new trial upon that ground, and because the verdict was contrary to the evidence, and the weight of the evidence; and also, on the ground of newly discovered evidence. The defendant, on the trial, introduced two witnesses in support of his general character, and the newly discovered evidence set forth in the record is that of witnesses who would swear as to the defendant's good character. The Court overruled the motion for a new trial: *Held,* that it was not error in the Court below in refusing the motion for a continuance of the case on the ground of the defendant's surprise that his general character had been impeached, he having been a resident of the city and county where the suit was pending for several years preceding the trial.

There is sufficient evidence in the record to support the verdict, and the alleged newly discovered evidence is merely *cumulative,* and to the same point, as the evidence introduced by the defendant on the former trial in support of his general character.

Continuance. Impeaching Witness. New Trial. Before Judge POPE. Fulton Superior Court. May Term, 1869.

Reed averred, that on the 23d of May, 1864, in said county, he left with Lynes, as a warehouseman, on storage, twenty-seven barrels of tobacco, each weighing one hundred pounds, and worth $2 00 per pound, Lynes agreeing to keep it, and delivered it upon demand; that Lynes sold it, and converted the proceeds to his own use. Lynes pleaded the general issue, and a set-off for its storage from November the 4th, 1863, till November the 4th, 1864, $78 00.

REED testified that Lynes promised to take care of said tobacco during the seige of Atlanta the best he could, and return it to him; that Lynes, in May or June, 1865, was called on for the tobacco, and told several tales about it; first said he had sold it, and would pay when he got the

money for it, afterwards denied selling it, setting up that it was taken from him by Captain Swift; that Lynes had no authority to sell it, though had he sold it, and accounted for the proceeds, Reed would have been satisfied; that he paid all storage up to the 23d of May, 1864; customary storage was twenty-five cents per package per month ; Reed was a Colonel in the Confederate service, and remained here till 22d July, 1864, and then went south.

Reed's counsel read in evidence the warehouse receipt. A witness, who remained in Atlanta while the Federal army occupied it, testified that he found no difficulty in keeping property safe, that there was a good market for smoking tobacco, he had some of the same kind as plaintiff's, and readily sold it to the Federal soldiers at from fifty cents to one dollar per pound in cash; that such an article is now worth forty cents per pound. Another witness testified that he had previously stored said tobacco with Lynes, sold it to Reed at sixty cents per pound, in Confederate currency, while it was there, and that usual storage then was twenty-five cents per package per month. Plaintiff closed. Lynes testified that he had had the tobacco about nine months before Reed bought it, the storage was never paid, but when he gave the receipt, Reed agreed to pay all when he withdrew the tobacco; that soon after he was about to be conscripted and taken before plaintiff, then in charge of such matters, and upon his making a satisfactory showing ; Reed ordered him released, and following him out, asked him to save the tobacco for him if he could, Lynes replied that he had many friends among the Irishmen in Sherman's army, and that if they came into Atlanta he believed he could save the tobacco ; that Reed told him to do the best he could with it, as if it were his own ; that about June, 1864, a party of marauders from Wheeler's cavalry broke open his store and took one barrel of this tobacco, and other things ; he then took the tobacco into his house, and concealed it in the basement and up-stairs ; that after the Federal army had been here some time, he became acquainted with several officers, and sold them a small quantity of

Lynes *vs.* Reed.

other tobacco ; he met Swift, who questioned him about the tobacco, and afterwards came with wagons and a party of armed soldiers, and entered the house ; that Lynes met him, and asked what it meant, to which Swift replied, "Mr. Lynes, these are rough men, I don't wish to see you hurt, you had better go back ;" he went back to his room, and the soldier's took off all of his, and all of Reed's tobacco. Lynes tried to have Swift arrested, but he left that night; the next day, or soon after, Lynes left for Nashville, with others, who were ordered to leave ; that he complained against Swift, had him arrested and brought to Chattanooga, but nothing came of it ; Swift said he had taken it for the Government, and would see that it was paid for, but it was not paid for ; that Reed never paid the storage, and it is yet due; he denied having ever told Reed anything contrary to the above, or that he sold it to Swift, or that he got Swift to carry off the tobacco in gun boxes ; the taking was forcible and against his will.

Lynes' sister-in-law testified as to the coming of Swift, his remark to Lynes, and the soldiers taking off the tobacco, the breaking of the Store in June, 1864, about the same as did Lynes.

Reed's attorneys introduced two witnesses, who testified that they knew Lyne's general character in the county, and would not believe him on oath, one saying he had known him here fifteen or twenty years, and never heard any one speak well of him, and the other saying he had known him here ten years or more.

Plaintiff again closed.  Lynes' counsel stated in his place that the defendant was taken wholly by surprise by this impeachment, and if time were allowed, could meet it successfully, and moved for a continuance or a postponement to allow an opportunity to do so.  He was about to swear Lynes in support of the motion, but the Court ruled that there was no sufficient showing for a continuance or postponement, and that without regard to the fact that Lynes was not sworn.

Lynes' counsel then called from the bystanders several

witnesses. One testified that he was acquainted with Lynes' character, and would believe him on his oath; another testified that he had known him many years, had heard some speak ill and others good concerning him, but could not swear as to his character; the other testified that he had known him since the war, that his character was good, and he would believe him on oath. Upon cross-examination he said he knew that Lynes was charged with stealing brick, but that the trial satisfied him that Lynes was honest, and the Court thought it a mere trespass, and inflicted a nominal fine; that witness knew that in his favor, and also that Governor Bullock had appointed Lynes to the honorable and responsible office of notary public. When these witnesses were called, it was near the dinner hour, and the crowd in the Court room was greatly diminished. After examining them, Lynes' counsel stated that he could then produce no other witnesses, and the cause was closed. Reed's attorney briefly stated his points to the jury, and Lynes' attorney, in reply, had occupied about fifteen minutes when Court adjourned for dinner. After dinner, the argument was resumed and concluded without any motion to introduce other witnesses. The jury found for Reed $740 00, and costs of suit.

Lynes' attorney moved for a new trial upon the grounds that the Court erred in refusing a continuance when it was asked for, and because, since the trial he had discovered witnesses by whom, if time had been given him, he could have supported Lynes' character, and because the verdict was contrary to law and the evidence; and, in support of the second ground, he produced the affidavits of about twenty citizens of Atlanta, to the effect that they knew Lynes' character and would believe him on oath. The Court refused a new trial, and that is assigned as error on said grounds.

HILLYER & BROTHER, for plaintiff in error, cited Hilliard on New Trials, 415; 27th Miss., 270.

A. W. HAMMOND & SON, for defendant, replied, person at *home* may not be surprised at attack of his character: 1

Phil. Ev., 291; 1 Gr. Ev., sec. 461.   No new trial to support impeached witness : 9 Ga. R., 4; 10th, 527; 13th, 513; 25th, 182: 34th, 110; 3 John. R., 255; 5 John. R., 248; 4 John. R., 424; 37 Ga. R., 48; 38th, 650.   As to newly discovered evidence.: 34 Ga. R., 114, 569; Irwin's Code, sec. 3665, etc.

WARNER, J.

We will not control the discretion of the Court below in refusing to continue the case on the statement of facts presented by the record.   Every man is supposed, to be able to support his general character for truth and veracity in the community in which he lives, the more especially when he has been a resident of the city in which the trial was had for several years.

The defendant called witnesses to support his general character, who were sworn on the trial.   The newly discovered evidence for which the new trial is sought, is that of witnesses who will sustain his general character for truth and veracity, which is merely *cumulative*, and is to the same point as the evidence offered by him on the trial in relation to his general character.   There is sufficient evidence in the record to sustain the verdict of the jury.

Let the judgment of the Court below be affirmed.